UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BETSY P. VARNO,

                      Plaintiff,

   -v-                                             7:11-CV-0803

JEFFERSON COUNTY DEPARTMENT OF
PLANNING, DONALD CANFIELD, ANDREW
NEVIN, and MICHAEL BOURCY.

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                                           OF COUNSEL:

BETSY P. VARNO
Plaintiff, pro se
P.O. Box 64
Victor, NY 14564

LAURA L. SPRING, ESQ.
COHEN COMPAGNI BECKMAN APPLER & KNOLL, PLLC
Attorney for the Defendants
507 Plum Street, Suite 310
Syracuse, New York 13204

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

     Plaintiff Betsy Varno ("plaintiff" or "Varno") brought this action against her former employer, defendant Jefferson County Department of Planning (hereinafter, the "county defendant"), her former supervisor, defendant Donald Canfield ("Canfield"), and former colleagues, defendant Andrew Nevin ("Nevin") and defendant Michael Bourcy ("Bourcy")

(Canfield, Nevin and Bourcy collectively, the "individual defendants") asserting claims under: (i) 42 U.S.C. § 2000e-2 ("Title VII"), (ii) the Age Discrimination in Employment Act of 1967 ("ADEA"); (iii) 42 U.S.C. § 1983, (iv) the Equal Pay Act, 29 U.S.C. § 201 et. seq. ("Equal Pay Act"), and (v) the New York State Human Rights Law, N.Y. Exec. Law § 296(1) ("NYSHRL").[1] The defendants' have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes. For the reasons discussed below, defendants' motion is granted.

## II. **BACKGROUND**

The following facts, taken from the Complaint and the parties' statements pursuant to Local Civil Rule 7.1(3), are undisputed unless otherwise indicated. Consideration has been given to whether the parties have proffered admissible evidence in support of their positions and has viewed the facts in the light most favorable to the nonmoving plaintiff.[2]

Varno is a female with a date of birth of December 13,1953. On or about October 6, 2008, Plaintiff was hired by defendant Canfield on behalf of defendant Jefferson County Planning Department as a Senior Planner. For the duration of plaintiff's employment with county defendant, defendant Canfield served as Director of the Department and as plaintiff's supervisor. In addition, Defendant Canfield offered plaintiff her Senior Planner position.

---

[1] Dkt. No. 4 is plaintiff's complaint, however, attached to Dkt. No. 4 is Dkt. No. 4-2, which is the same complaint with forty-two pages of exhibits. For purposes of this motion, all references to the complaint will be made to Dkt. No. 4-2.

[2] Plaintiff submits a response to Defendants' Statement of Material Facts, ECF No. 73-2. Northern District Local Rule 7.1(a)(3) requires an opposing party to admit or deny each of the movant's assertions in matching numbered paragraphs and set forth a specific citation to the record where factual issue arises. In her Statement of Material Facts, plaintiff provides comment to each statement and sparsely cites to the record, which does not meet the technical compliance of Northern District Local Rule 7.1(a)(3). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (citation omitted).

Pursuant to New York State Civil Service Law and Rule XIV of the Jefferson County Civil Service requirements, plaintiff was appointed to her position on a probationary basis, subject to a probationary period of 52 weeks.

On or about May 11, 2009, Varno was reassigned or demoted from her position as a Senior Planner and into the new position of Community Development Coordinator. This new appointment was also subject to a 52 week probationary period. The position of Community Development Coordinator was a lower grade position; however, Varno's salary remained nearly the same as that of the Senior Planner she previously held. On or about May 11, 2009, defendant Bourcy was promoted to the position of Senior Planner.

On or about February 4, 2010, defendant Canfield and plaintiff spoke about plaintiff's job performance, however, defendant Canfield characterized the meeting as a performance evaluation and plaintiff characterized the exchange as a short discussion which did not comprehensively address her work. On or about February 11, 2010, plaintiff met with defendants Canfield, Nevin and Bourcy to discuss her job performance.

On April 20, 2010, plaintiff was informed by defendant Canfield that her employment with defendant Jefferson County Department of Planning would not be extended past her probationary period. Plaintiff was officially terminated from her position as a Community Development Coordinator on May 7, 2010.

On or about June 24, 2010, plaintiff filed a charge of discrimination with the United State Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New York State Division of Human Rights ("NYSDHR"). In that charge, plaintiff alleged that defendants demoted and terminated her as a result of her gender and age. By a Determination and Order dated April 27, 2011, the EEOC issued a dismissal and notice of

right to sue letter to plaintiff.  The EEOC was unable to conclude that the charge filed by plaintiff established violations of the statutes cited and found no probable cause to support plaintiff's allegations.

It is important to note that this was the first time that plaintiff made a complaint that the defendants were treating her differently because of her gender and/or age.  During the course of her employment, she never filed a written complaint with the county defendant nor in fact, did she ever make even an informal or oral complaint or objection to the defendants that she was being treated differently because of her gender and/or age.

On July 13, 2011, plaintiff filed her pro se complaint in this action.  See Complaint.  By Decision and Order, dated November 18, 2011, plaintiff's Title VII and ADEA claims against the individual defendants and plaintiff's Title VII and ADEA claims regarding her May 2009 demotion were dismissed with prejudice.  See Memorandum Decision and Order, November 18, 2011.

### III. DISCUSSION

### A. Summary Judgment Standard.

Summary judgment is appropriate where, construing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. PRO. 56(c); Richardson v. Selky, 5 F.3d 616, 621 (2d Cir. 1993).  The party moving for summary judgment has the burden to establish "that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Bowen v. National R.R. Passenger Corp., 363 F. Supp. 2d 370, 373 (N.D.N.Y. 2005), quoting Rodriquez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of [their] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. (quoting First Nat'l Bank of Ariz. v. Cities Svcs.Co., 391 U.S. 253, 288 (1968)). Those specific facts must be supported by "citing to particular parts of materials in the record." FED. R. CIV. PRO. 56(c)(1)(A). "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50.

Although discrimination claims may involve questions of intent that are ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting McLee v. Chrysler Corp., 38 F. 3d 67, 68 (2d Cir. 1994)). "[T]rail courts should not treat discrimination differently from other ultimate questions of fact." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000). Accordingly, "even in a discrimination context", a plaintiff must offer "more than conclusory allegations" to survive a motion for summary judgment. Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010).

**B. Statutes Governing Plaintiff's Claims of Employment Discrimination.**

As previously noted, plaintiff alleges that defendants discriminated and retaliated against her because of her gender and age in violation of Title VII, the ADEA, 42 U.S.C. § 1983, the Equal Pay Act and NYSHRL.

Title VII and NYSHRL make it unlawful for employers to discriminate against their employees because of their gender with respect to their terms and conditions of employment. See 42 U.S.C. § 2000e-2(a)(1); N.Y. Exec. Law § 296(1). The ADEA protects persons who are 40 or over from discrimination by virtue of that person's age. See 29 U.S.C. §§ 623(a)(1).

42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under the color of any statute, ordinance, [or] regulation . . . of any State . . ., subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ." 42 U.S.C. § 1983.

### *C. Discrimination Standard.*

Courts use the triparite burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze intentional discrimination claims under Title VII, the ADEA and 42 U.S.C. § 1983. See Ruiz v. County of Rockland, 609 F.3d 486, 491 (2d Cir. 2010) (citation omitted). The plaintiff bears the initial burden of establishing, by a preponderance of the evidence, a prima facie case of discrimination. See Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008). In the context of a discriminatory demotion or termination, a plaintiff must show that "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002).

If the plaintiff establishes a prima facie case, the burden of production shifts to the defendants to articulate a legitimate, non-discriminatory reason for the challenged adverse

employment decision or action. See Luciano v. Olsten Corp., 110 F.3d 210, 215 (2d Cir. 1997). This "burden is one of production, not persuasion . . . and involves no credibility assessment of the evidence." Pathare v. Klein, 2008 WL 4210471, at \*4 (S.D.N.Y. Sept. 12, 2008) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Once the defendant presents a legitimate, non-discriminatory reason, the burden returns to the plaintiff "to demonstrate that [the] defendant's articulated reason for its decision is in fact a pretext for discrimination[.]" Id. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In the summary judgment context, this means plaintiff must "establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for its decision for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1225 (2d Cir. 1994).

***D. Gender Discrimination under Title VII.***

*i. Prima Facie Case.*

Defendants contend that plaintiff has failed to establish a prima facie case of gender discrimination. Defendants concede that plaintiff is a member of a protected class and suffered an adverse employment action. However, they dispute that plaintiff was qualified for the position she was terminated from and that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.

Varno contends that she was demoted[3] and terminated as a result of her gender, arguing that the defendants wished to provide her position to younger, male colleagues. To support this claim, plaintiff provides statements which she believes demonstrate a prima facie case. Specifically, she states that defendant Bourcy, a male, was appointed to the position as a Senior Planner in May 2009, after she was removed from the position. Further, plaintiff states that defendant Canfield instruction her to "sell [herself]" to defendants Bourcy and Nevin. Plaintiff also alleges that defendant Nevin treated her as a shadow rather than a participant. Plaintiff additionally alleges that her coworkers, including the individual defendants criticized her speech, her thought process and how she ate. Plaintiff further alleges that in a meeting on February 11, 2010, defendant Canfield stated that plaintiff stated that "[i]f you can't change your face, you can't work here", and that all individual defendants criticized her face and body-language. Plaintiff states that during an April 2010 meeting with defendant Canfield, Canfield drew a picture of a box and x's, which see believed was sexual in nature. Lastly, plaintiff alleges that defendant Bourcy made a comment to her outside the office that she "do something to herself", which she also believes has sexual in nature.

Although plaintiff's evidence is disputed by defendants as being unrelated to plaintiff's gender or age, for purposes of this motion and because of plaintiff's *pro se* status, it will be assumed, without deciding, that plaintiff has met her minimal burden to demonstrate a prima facie case of gender discrimination. See Levitant v. Hilt N.Y. Waldorf LLC, 2012 WL 414515, at *4 (S.D.N.Y. Feb. 6, 2012) (finding that, "[b]ecause a plaintiff's burden in establishing a prima facie case of unlawful termination under the *McDonnell Douglas* framework is de minimis, . . . the Court

---

[3] In the November 18, 2011 Decision and Order, plaintiff's Title VII and ADEA claims with regards to her May 2009 demotion were dismissed as a result of plaintiff's failure to file a charge of discrimination with the EEOC within 300 days of the alleged unlawful practice. See ECF No. 10.

assumes without deciding that plaintiff has established a prima facie case of age- and disability-based discriminatory discharge.") (citing Dister v. Continental Group, Inc., 859 F.2d 1108, 1115 (2d Cir. 1988)).

*ii. Legitimate Non-Discriminatory Reason for Termination.*

Defendants have presented sufficient admissible evidence to establish a legitimate non-discriminatory reasons for the adverse employment action against plaintiff. Defendants argue that from the time plaintiff was hired in October 2008 her work product was deficient and that she suffered from a lack of focus, inability to grasp the proper context of tasks, failed to follow approaches suggested by superiors and colleagues, and general substandard quality of her execution of tasks assigned to her. To support their claim, defendants have produced a Probationary Report, dated May 13, 2009, approximately eight months after plaintiff's hiring, signed by Donald Canfield, stating that plaintiff's conduct, capacity and fitness for her position of Senior Planner to be unsatisfactory. Defendants have also provided Affidavits indicating that throughout her employment staff gave plaintiff guidance and instructions. Further, on or about February 4, 2010, Canfield conducted a performance review with the plaintiff to address plaintiff's alleged deficiencies and areas were improvement was needed. On February 11, 2010, defendants Canfield, Nevin and Bourcy again met with plaintiff to address her inadequate performance as a Community Development Coordinator. On April 19, 2010, defendant Canfield met with Nevins and Bourcy and determined that plaintiff was not demonstrating sufficient planning and effective interpersonal working skills. As a result, plaintiff was informed her employment would not be extended beyond May 7, 2010. Plaintiff admits that defendants did perform practice mock presentations with her, although she believed the sessions were designed to humiliate and embarrass her.

Based on the record, defendants have presented evidence articulating a legitimate, non-discriminatory reason for terminating plaintiff from her employment as a Community Development Coordinator during her probationary period. The record contains evidence that Canfield decided to terminate plaintiff based on his judgment that she lacked the necessary expertise to complete her assignments in a satisfactory manner without a high level of supervision. In fact, a careful reading of plaintiff's statements only support a claim that she was ultimately terminated because of her attitude and unfair performance evaluations. She makes very little, if any, reference that gender and/or age was a reason for her termination.

   *iii. Lack of Pretext.*

Plaintiff has not demonstrated that Canfield's decision to terminate her was a pretext for discrimination. Plaintiff has not identified evidence of discriminatory or retaliatory animus based on her gender as it relates to her termination.

Courts have ruled that a strong inference that discrimination was not a motivating factor in an employee's discharge is created when the individual who made the discharge decision is the same individual who hired the employee, and the hiring and discharge occur within a relatively short time span. "[W]here the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." Schnabel v. Abramson, 232 F.3d 83, 91 (2d Cir. 2000). This "remains a highly relevant factor in adjudicating a motion for summary judgment". Id. "This is especially so when the firing has occurred only a short time after the hiring." Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) (eight days between hiring and firing provides strong inference); Schnabel, 232 F.3d at 91 (three years between hiring and firing was "highly relevant"). See also Spadaro v. McKeon, 693 F. Supp.2d 183, 188 (N.D.N.Y. 2010) (D.J. Kahn)

(inference is particularly strong given five month period between hiring and firing); Wallmar-Rodriguez v. Felix Roma Bakery, 2007 WL 1388120, at *5 (N.D.N.Y. May 9, 2007) (D.J. McAvoy) (10 month period diminishes the inference of discrimination); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir.1993) (under two years, still a significant inference against discrimination); Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174–75 (8th Cir.1992) (less than two years, inference against discrimination still applies); Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991) (six months provides for strong inference against discrimination); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 138 (2d Cir. 2000) (inference less compelling after seven years). The same actor inference has been extended to protected characteristics other than gender, including disability, national origin, gender and race. See Peguero-Miles v. City University of New York, 2015 WL 4092336, at *9 (S.D.N.Y. July 6, 2015) (applying same actor inference to age discrimination claim); Cooksey v. Hertz Corp., 2004 WL 1093674, at *4 (E.D.N.Y. Jan. 26, 2004) (applying same actor inference to race discrimination claim).

The same-actor inference is not dispositive, however, when the decisionmaker makes comments demonstrating discriminatory animus. See Phillips v. Dow Jones Co., 2009 WL 2568437, at *15 (S.D.N.Y. Aug. 17, 2009) (denying employer's summary judgment motion even though the same supervisor hired and fired plaintiff—partially because the supervisor made numerous racial remarks); Braunstein v. Barber, 2009 WL 1542707, at *1 (S.D.N.Y. Jun. 2, 2009) ("The same-actor inference is not dispositive, particularly where, as here, there is evidence that such actor made comments that could be construed as overtly discriminatory."); Bookman v. Merrill Lynch, 2009 WL 1360673, at *14 (S.D.N.Y. May 14, 2009) ("Simply put, in light of the evidence in the record of discriminatory comments by [plaintiff's supervisors], the application of the 'same actor' inference at this stage would improperly usurp the role of the fact finder.").

In the present case, defendant Canfield hired plaintiff in October 2008, demoted her from the position of Senior Planner to Community Development Coordinator in May 2009[4] and terminated plaintiff's employment with the county defendant in April 2010. Such a small window of time provides a strong inference against a finding a discriminatory pretextual termination. The fact that both the demotion and termination were within the county's 52 week probationary period also supports the conclusion that the adverse decisions were taken as a result of an assessment of plaintiff's work performance and not a result of discriminatory intent. Further, plaintiff has not presented evidence of overt discriminatory comments by Canfield or any other employee of the planning department during her employment. Lastly, the evidence submitted indicates that plaintiff's position of Community Development Coordinator was filled by a woman, Hartley Bonisteel. There is no record evidence that she was treated less favorably than a similarly situated employee as a result of her gender to overcome the strong inference against a finding of discrimination created by the same actor defense.

Even construing the facts in the light most favorable, the plaintiff has failed to proffer evidence to support the conclusion that the county defendant's reasons for its actions were a pretext for discrimination. Accordingly, defendant's motion for summary judgment with respect to plaintiff's gender discrimination causes of action will be granted.

### *E. Age Discrimination under the ADEA.*

The ADEA makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Analyzing plaintiff's ADEA claims pursuant to the <u>McDonnell Douglas</u> approach, the plaintiff has initial burden of establishing a

---

[4] The May 2009 demotion also began a new 52 week probationary period.

prima facie case of discrimination.  See Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001).

To support her ADEA claim, plaintiff offers that her position of Community Development Coordinator was filed by a younger employee. Further, plaintiff proffers evidence that defendant Nevins commented that defendants "can't teach an old dog a new trick" when referring to plaintiff.

Even assuming that plaintiff may have made a prima facie case of age discrimination, as discussed in Section D above, defendants have demonstrated a legitimate non-discriminatory reason for her termination in May 2010 and there is a strong inference against a finding of discrimination given the chronological events of her employment.

Further, plaintiff was over 40 and in the protected class when she was initially hired as a Senior Planner by defendant Canfield.  "[C]ourts in this Circuit have recognized that any inference of age discrimination is undercut where, as here, a plaintiff is over 40 years old when she is hired." Vinokur v. Sovereign Bank, 701 F. Supp. 2d 276, 288 (E.D.N.Y. 2010).  See also Bailey v. Frederick Goldman, Inc., 2006 WL 738435, at *4 (S.D.N.Y. Mar. 23, 2006).  The fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference. See Austin v. Ford Models, Inc., 2000 WL 1752966, at *14 (S.D.N.Y. Nov. 29, 2000), Cousins v. Howell Corp., 113 F. Supp. 2d 262, 269 (D. Conn. 2000); Connell v. Con. Edison Co. of New York, Inc., 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000); Campbell v. Alliance Nat'l, 107 F. Supp. 2d 243, 248 (S.D.N.Y. 2000).

As Canfield himself was a member of the protected class, there exists an additional inference against a discrimination finding.  See Cooper v. Morgenthau, 2001 U.S. Dist. LEXIS 10904, at *6 (S.D.N.Y. July 31, 2001).  Again, even construing the facts in the light most favorable, the

plaintiff has failed to proffer evidence to support the conclusion that the county defendant's reasons for its actions were a pretext for age discrimination. Accordingly, defendant's motion for summary judgment with respect to plaintiff's age discrimination causes of action will be granted.

### *F. Retaliation.*

To establish a prima face case of retaliation, a plaintiff must demonstrate: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Wright v. City of Syracuse, 2015 WL 1727169, at *2 (April 16, 2015, 2d Cir.) (citing Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010)).

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) (noting that a protected activity need not "rise to the level of a formal complaint in order to receive statutory protection"). Protected activities encompass "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). A plaintiff "need not establish that the conduct she opposed was in fact a violation of [the law]," Bush v. Fordham Univ., 452 F. Supp. 2d 394, 416 (S.D.N.Y. 2006), but she must demonstrate a "good faith, reasonable belief that the underlying challenged actions of the employer violated the law," id. (quoting Sumner, 899 F.2d at 209). The reasonableness of a plaintiff's belief is to be assessed in light of the totality of the circumstances. See Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996).

A plaintiff may establish a causal connection between the protected activity and the adverse employment action "either (1) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant[,] or (2) indirectly, by showing that the protected activity was followed closely by discriminatory treatment." Schanfield v. Sojitz Corp. of America, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) (citing Knight v. City of New York, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)). In order for a court to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case," the temporal proximity must be "very close". Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing cases finding temporal proximity of three months and more to be insufficient).

Retaliation claims, whether under Title VII or 1983, are analyzed pursuant to Title VII principles. See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010). Thus, courts evaluate all such claims under the burden shifting framework set forth in *McDonell Douglas* as discussed in Section C above. See Patane v. Clark, 508 F.3d 106, 115-17 (2d Cir. 2007).

Plaintiff claims she was retaliated against for her "crossing a performance ceiling" and using her "professional skill to make a meaningful contribution to the Jefferson County Department of Planning". Plaintiff further states that she believes the negative criticism of her work, demotion and eventual termination was in retaliation when she: (i) "began asking questions about intergovernmental policy coordination", floodplain management and the employee review process; (ii) "attempt[ed] to excel without an opportunity for a discussion"; and (iii) "demonstrat[ed] leadership". Plaintiff states that the individual defendants criticized the plaintiff's way of thinking and refused to accept her as a person with a different perspective, different life experiences and different values.

- 15 -

Based on the evidence in the record and drawing all reasonable inferences in Plaintiff's favor, plaintiff has not established a prima facie case of retaliation under either Title VII or 42 U.S.C. 1983. Plaintiff appears to argue that she was retaliated against as a result of her desire for career advancement and her actions to see the Planning Department address issues that were clearly important to her, such as intergovernmental policy and floodplain management. However, such desires and acts do not constitute "protected activity" under Title VII.

As previously noted, plaintiff never filed a written complaint with the county defendant of any type of age and/or gender discrimination. In fact, during the entire course of her employment she does not allege that she ever informally or orally complained of gender or age discrimination to the individual defendants or anyone else at the defendant Jefferson County Department of Planning.

Plaintiff has not shown that there was a casual connection, let alone a but-for connection, between any protected activity and the decision to terminate her employment. Accordingly, defendant's motion for summary judgment with respect to plaintiff's retaliation claims will be granted.

### *G. Unequal Terms and Conditions of Employment.*

In her Complaint, plaintiff also alleges that her conditions of employment were unequal based upon her age and gender, including that she was denied an explanation of the employee evaluation procedure and that she was forced to read from a script while other employees were not. Again, plaintiff has failed to present any evidence that these terms or conditions of employment were based upon her age or gender. Therefore, these claims also fail as a matter of law.

### *H. Equal Pay Act.*

To state a prima facie claim under the Equal Pay Act, plaintiff must allege that: (1) the employer paid different wages to employees of the opposite sex; (2) the employees performed equal work on jobs requiring equal skill, effort and responsibility; and (3) the jobs were performed under similar working conditions. See Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999).

Varno's complaint contains no allegations to support her claim under the Equal Pay Act and only makes vague assertions of unequal pay scale. See Complaint, ECF No. 4-2, ¶¶ 39, 43, 55, 56, 58, 64, 78 and 79. In her Response to defendants' summary judgment motion, plaintiff states her belief that defendants wanted to lower her rate of pay to permit younger, male colleagues to obtain a higher pay rate. See Complaint, ECF No. 73-1, 17. Further, plaintiff states her alleged discriminatory termination caused an adverse impact on her finances. However, such claims represent damages resulting from Plaintiff's alleged discriminatory termination and are not sufficient to form a prima facie claim under the Equal Pay Act.

As a result, defendants' summary judgment motion with respect to plaintiff's Equal Pay Act cause of action will be granted.

### *I. 1983 Action*

Where a plaintiff asserts a claim under 42 U.S.C. § 1983 which, as in the instant case, mirrors a claim brought under Title VII, the elements of the claims are the same, and the same burden-shifting framework applies to each. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993)). Based on the foregoing discussion, it is therefore clear that defendants are entitled to summary judgment with regard to plaintiff's claims under § 1983.

### *J. New York Human Rights Law*

New York courts "require the same standard of proof for claims brought under the NYHRL as for those brought under Title VII." Leopold v. Baccarat, Inc., 174 F.3d 261, 264 n. 1 (2d Cir. 1999). As a result, Title VII claims and NYHRL are analyzed in tandem. Id. (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1304, n. 4 (2d Cir. 1995). As plaintiff has failed to provide evidence to permit a reasonable fact finder to find a violation under Title VII or the ADEA, plaintiff has also failed to provide sufficient proof under New York Human Rights Law as well.

IV. CONCLUSION

Plaintiff's basic claims against the defendants is that she was unfairly terminated because of her attitude (that is, her attempt to cross a performance ceiling and her ambitions to advance) and unfair job performance evaluations. These claims are not violations of Federal or state laws. Plaintiff has failed to set forth any actual evidence that her termination was based upon either her gender or age.

Therefore, it is ORDERED that:

(1) defendants' motion for summary judgment is GRANTED; and

(2) the complaint is DISMISSED.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

_____
United States District Judge

Dated: September 23, 2015
Utica, New York